**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

NINOSKA SUATE-ORELLANA,
AKA Ninosca Suate Oriana,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney
General,

*Respondent*.

No. 19-72446

Agency No.
A200-965-308

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 8, 2023
Portland, Oregon

Filed May 7, 2024

Before: Marsha S. Berzon, Jacqueline H. Nguyen, and Eric
D. Miller, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Immigration

The panel granted Ninoska Suate-Orellana's petition for review of the Board of Immigration Appeals' dismissal of an appeal of an immigration judge's denial of a motion for reconsideration and termination of an underlying removal order based on a defective Notice to Appear, and remanded, holding that: 1) Suate-Orellana had exhausted her claim that her NTA was statutorily deficient; 2) 8 U.S.C. § 1231(a)(5), which bars reopening or review of an order of removal that has been reinstated, is not jurisdictional; and 3) the government had forfeited its claim that § 1231(a)(5) barred reopening here.

After the Department of Homeland Security reinstated Suate-Orellana's prior order of removal, she filed a motion for reconsideration and termination of the underlying removal order arguing that the Notice to Appear in the underlying immigration proceedings was statutorily deficient under 8 U.S.C. § 1229(a)(1) and *Pereira v. Sessions*, 585 U.S. 198 (2018), because it did not state the time or date of her hearing. The BIA did not discuss the timeliness of Suate-Orellana's motion, nor the agency's jurisdiction, and instead dismissed her appeal on the merits, stating that the NTA and the subsequently issued hearing notice together provided Suate-Orellana with the required notice.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

As an initial matter, the panel concluded Suate-Orellana had exhausted the claim that her NTA was statutorily deficient. Suate-Orellana's arguments that she "was ordered removed on the basis of a putative Notice to Appear that did not contain the requisite time or place information under the INA" and that she "was never issued a valid Notice to Appear indicating the date and time of her proceedings, as the statute requires" were sufficient to put the BIA on notice of her challenge.

Noting that the legal landscape had changed significantly since the BIA's decision dismissing her appeal, the panel remanded Suate-Orellana's petition so that the BIA could reconsider the merits of her claim in light of intervening authorities.

The government argued that remand would be a useless formality because the BIA does not have jurisdiction to consider Suate-Orellana's motion, in light of 8 U.S.C. § 1231(a)(5), which bars reopening or review of an order of removal that has been reinstated. Applying the framework of *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), the panel held that because § 1231(a)(5) does not "unmistakably" speak in jurisdictional terms, it is non-jurisdictional. The BIA therefore may—as it did here—exercise jurisdiction over an appeal concerning a motion to reopen a reinstated removal order. Because the government did not raise § 1231(a)(5) until the panel ordered supplemental briefing on the issue, the panel concluded that the issue had been forfeited. As a result, remand would not be idle and useless.

## COUNSEL

Jessica Rofé (argued); Naomi B. Sunshine and Nancy Morawetz, Supervising Attorneys; Jencey Paz and Vibha Khan, Legal Interns; New York University School of Law, Immigrant Rights Clinic, Washington Square Legal Services Inc., New York, New York; for Petitioner.

Arthur L. Rabin (argued), Trial Attorney; Patrick J. Glen, Senior Litigation Counsel; Stephen J. Flynn, Assistant Director; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C.; for Respondent.

Trina Realmuto and Kristin Macleod-Ball, National Immigration Litigation Alliance, Brookline, Massachusetts, for Amicus Curiae National Immigration Litigation Alliance.

## OPINION

NGUYEN, Circuit Judge:

Ninoska Suate-Orellana ("Suate-Orellana") unsuccessfully applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and was ordered removed to Honduras in 2011. She unlawfully reentered the United States in 2014, and the Department of Homeland Security ("DHS") reinstated her prior order of removal. Suate-Orellana unsuccessfully challenged denial of relief in those removal proceedings, which are not before this court. While removal proceedings

were ongoing, she filed a motion for reconsideration and termination of the underlying removal order. An immigration judge ("IJ") denied the motion. The Board of Immigration Appeals ("BIA") dismissed her appeal. Suate-Orellana now petitions for review of the BIA's decision on her motion for reconsideration.

Suate-Orellana argues that the Notice to Appear ("NTA") in the underlying immigration proceedings was deficient under 8 U.S.C. § 1229(a)(1) because it did not state the time or date of her hearing. Contrary to the government's contention, Suate-Orellana has exhausted this argument in her briefing below. Although the IJ and BIA addressed her argument that her NTA was deficient on the merits, the legal landscape has changed significantly since the BIA's decision dismissing her appeal. *See, e.g.*, *Niz-Chavez v. Garland*, 593 U.S. 155, 171–72 (2021); *United States v. Bastide-Hernandez*, 39 F.4th 1187, 1193 n.9 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 755 (2023); *Matter of Fernandes*, 28 I. & N. Dec. 605, 616 (B.I.A. 2022). We therefore grant and remand Suate-Orellana's petition so that the BIA may reconsider the merits of her claim in light of these intervening authorities. *See Pannu v. Holder*, 639 F.3d 1225, 1229 (9th Cir. 2011) (remanding to the BIA in light of "significant intervening [legal] developments").

## I. Background

### A. Factual Background

Suate-Orellana came to the United States in 2011, having fled Honduras after a gang killed her partner and threatened to kill her. While in custody, she had a credible fear interview; the asylum officer found that she had a credible fear and referred her asylum claim to an IJ. On February 8,

2011, DHS issued an NTA, stating the date and time of her hearing were "to be set."

Later, the Immigration Court issued a Notice of Hearing setting Suate-Orellana's video hearing for March 31, 2011, at 1:00 PM.  Suate-Orellana, still in custody, appeared pro se via video for the hearing.  The record before the IJ included an I-589 Application for Asylum and for Withholding of Removal, a letter handwritten by Suate-Orellana in Spanish dated March 7, 2011, detailing her fear of returning to Honduras, and a 2009 U.S. Department of State Human Rights Report on Honduras.  At the conclusion of the hearing, the IJ found Suate-Orellana credible but ordered her removed.

After Suate-Orellana returned to the United States, DHS reinstated her removal order in 2014, and Suate-Orellana entered withholding-only proceedings.  *See Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2018) ("[Withholding-only] proceedings are an exception to the general prohibition against seeking relief from removal pursuant to a reinstated order.") (citing 8 C.F.R. § 241.8(e)).  She was denied relief in those proceedings.  *See Suate-Orellana v. Barr*, 979 F.3d 1056 (5th Cir. 2020).

B. Procedural History

On July 20, 2018, Suate-Orellana filed a motion requesting that the IJ reconsider and terminate her underlying removal order.  She filed the motion within 30 days of the Supreme Court's decision in *Pereira v. Sessions*, 585 U.S. 198 (2018), which held that a "notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a).'"  *Id*. at 202.  In the motion, she argued that the IJ lacked jurisdiction to issue the removal order because the

NTA she received was statutorily deficient under *Pereira*. *See* 8 U.S.C. § 1229(a). Although motions to reconsider generally must be filed within 30 days of a final administrative order of removal, *see* 8 C.F.R. § 1003.23(b)(1), Suate-Orellana argued that equitable tolling applied, or, alternatively, that the IJ should reconsider the case sua sponte. The IJ denied the motion. The IJ also concluded that "even if the Court had found reconsideration or reopening of Respondent's removal proceedings warranted, the Court would nevertheless deny the motion to terminate," because *Pereira*'s holding does not divest an IJ of jurisdiction where the NTA lacks time and place information.

Suate-Orellana appealed to the BIA. She argued for equitable tolling or sua sponte reopening,[1] and she asserted that her NTA was invalid. The BIA dismissed her appeal. The BIA decision on the motion did not discuss the timeliness of Suate-Orellana's motion, nor the agency's jurisdiction. Rather, the BIA dismissed her appeal on the

---

[1] While Suate-Orellana stated in her brief to the BIA that she "appeals the [IJ] decision . . . denying her Motion to Reconsider and Terminate," she argued for sua sponte reopening, rather than sua sponte reconsideration (which is what she requested before the IJ). That change was likely because the IJ analyzed only whether sua sponte reopening was appropriate. Under the regulations in effect at the time, the standards for sua sponte reopening and reconsideration were the same. *See Bravo-Bravo v. Garland*, 54 F.4th 634, 640 (9th Cir. 2022) ("[T]he IJ had authority under the then-applicable regulation to 'reopen or reconsider any case in which he or she has made a decision,' at any time, 8 C.F.R. § 1003.23(b)(1) (2020).").

merits, stating "the NTA and the hearing notice together provided the respondent with the required notice."**[2]**

## II.  Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252.  We review denials of motions to reconsider or reopen for abuse of discretion.  *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1106 (9th Cir. 2006).  We review questions of law de novo. *Ayala v. Sessions*, 855 F.3d 1012, 1020 (9th Cir. 2017).

## III. Discussion

### A.  Suate-Orellana Exhausted Her Claim That Her NTA Was Statutorily Deficient.

The government argues that Suate-Orellana did not exhaust her claim that the NTA was statutorily deficient.**[3]** We disagree.

The exhaustion requirement contained in 8 U.S.C. § 1252(d)(1) is a non-jurisdictional "claim-processing rule." *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023). Although "it is subject to waiver and forfeiture," *id*. at 423, "[a] claim-processing rule [is] 'mandatory' in the sense that

---

[2] Because we cannot affirm the BIA on a ground upon which it did not rely, *Navas v. I.N.S.*, 217 F.3d 646, 658 n.16 (9th Cir. 2000), we do not consider whether Suate-Orellana's motion was timely.  *See Maie v. Garland*, 7 F.4th 841, 846 (9th Cir. 2021) ("[I]f the BIA considers an issue on its merits and chooses to ignore a procedural defect that would have justified declining to decide the issue, 'we cannot then decline to consider the issue based upon [the] procedural defect.'" (quoting *Abebe v. Gonzales*, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc))).

[3] While the government argues that Suate-Orellana raises various other unexhausted claims on appeal, Suate-Orellana clarifies that her "core claim" is that her NTA was deficient; she raises other facts simply "to show just how badly she was prejudiced."

a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)).

To exhaust a claim, the noncitizen must put the BIA on notice of the challenge, and the BIA must have "an opportunity to pass on the issue." *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). "A noncitizen need not raise a 'precise argument' before the BIA in order to exhaust it." *Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1051 (9th Cir. 2023) (quoting *Diaz-Jimenez v. Sessions*, 902 F.3d 955, 960 (9th Cir. 2018)).

In her motion to reconsider before the IJ, Suate-Orellana argued that she "was ordered removed on the basis of a putative Notice to Appear that did not contain the requisite time or place information under the INA." She then argued in her brief to the BIA that she "was never issued a valid Notice to Appear indicating the date and time of her proceedings, as the statute requires." This language was sufficient to put the BIA on notice of her challenge. *See Zhang*, 388 F.3d at 721.

The government insists that Suate-Orellana challenged the validity of the NTA only in the context of arguing that the IJ lacked jurisdiction. The government misconstrues Suate-Orellana's briefing below. She explicitly argued before the IJ that the NTA was statutorily deficient and that, *as a result*, the IJ lacked jurisdiction. And Suate-Orellana highlighted the NTA's deficiency under 8 U.S.C. § 1229(a)(1) in her brief to the BIA, arguing her NTA was "a document which the Supreme Court has held is statutorily deficient." The BIA recognized this distinct aspect of Suate-Orellana's argument, finding that the NTA

together with the subsequent hearing notices "provided the respondent with the required notice under . . . 8 U.S.C. § 1229(a)(1)," in addition to addressing the jurisdictional argument. Because the BIA had an opportunity to pass on the issue, *Zhang*, 388 F.3d at 721, Suate-Orellana has exhausted her claim that her NTA was statutorily deficient.

The government cites *Umana-Escobar v. Garland*, in which we held that the petitioner's "NTA argument sounded exclusively in jurisdiction and . . . the BIA thus had no reason to consider whether the NTA's defects could constitute some other type of violation which might be subject to waiver, such as a claim-processing violation." 69 F.4th 544, 550 (9th Cir. 2023). Suate-Orellana's brief before the BIA was different from the one filed in that case. While Suate-Orellana did not use the phrase "claim-processing violation," in her briefing below, she was not required to "use precise legal terminology to exhaust [her] claim," *id*. (quoting *Arsdi v. Holder*, 659 F.3d 925, 929 (9th Cir. 2011)), particularly for a framework that had yet to emerge. Indeed, the BIA did not adopt a claim-processing framework for NTAs which were allegedly deficient under § 1229(a)(1) until *after* its 2019 decision in Suate-Orellana's case. *See Matter of Fernandes*, 28 I. & N. Dec. at 608 (concluding that the time and place requirement in § 1229(a)(1) is a claim-processing rule).

Suate-Orellana clearly argued before the IJ that she believed her NTA was "not a notice to appear under" § 1229(a)(1) due to the missing time and date information, and before the BIA that she "was never issued a valid [NTA] indicating the date and time of her proceedings, as the statute requires." On this record, we find that Suate-Orellana provided the agency "an adequate opportunity to pass on the

issue."[4]  *Arizmendi-Medina*, 69 F.4th at 1051 (quoting *Diaz-Jimenez*, 902 F.3d at 960).  She has thus exhausted her argument that her NTA was statutorily deficient.  *See*, *e.g.*, *Ortiz-Santiago v. Barr*, 924 F.3d 956, 959, 962-66 (7th Cir. 2019) (analyzing noncitizen's deficient NTA claim as a statutory claim-processing violation, even though noncitizen "emphasize[d] his 'jurisdictional' argument" in briefing).

## B. We Remand for the BIA to Consider Suate-Orellana's Claim of a Statutorily Deficient NTA.

The BIA found that Suate-Orellana's NTA and "the hearing notice together provided [her] with the required notice under . . . 8 U.S.C. § 1229(a)(1)."  Since the BIA's 2019 decision, case law from the Supreme Court, the Ninth Circuit, and the BIA has emerged which may affect the outcome of this case.  In 2021, the Supreme Court issued *Niz-Chavez*, holding "'a notice to appear' . . . require[s] a single notice" under § 1229(a).  593 U.S. at 171.  Later, in *Bastide-Hernandez*, this Court noted that "the supplement of a notice of hearing would not cure any NTA deficiencies under § 1229(a)."  39 F.4th at 1193 n.9.  And the BIA has issued, among other decisions, *Matter of Fernandes*, holding

---

[4] Also, unlike the noncitizen in *Umana-Escobar*, far from telling "the BIA that it did not have to consider whether [her] claim had been waived because 'jurisdiction cannot be waived,'" 69 F.4th at 550, Suate-Orellana made extensive arguments about the timeliness of her motion throughout this litigation. *Cf. Fang Li v. Holder*, 743 F.3d 354, 356 (2d Cir. 2014) (finding BIA did not err in denying a motion filed nine years after noncitizen's deportation arguing the deportation order was invalid and seeking sua sponte reopening, because "[e]ven assuming" the issue was jurisdictional and thus "not subject to waiver," the deportation order was valid).  Such arguments put the BIA on notice that the NTA's defects "could constitute some other type of violation which might be subject to waiver." *Umana-Escobar*, 69 F.4th at 550.

§ 1229(a) is a claim-processing rule and finding an NTA without time and date information noncompliant with § 1229(a), despite a subsequent hearing notice specifying time and date. 28 I. & N. Dec. at 606-09, 616.

Because we may uphold an agency decision only "on the same basis articulated in the order by the agency itself," *Abebe*, 432 F.3d at 1041 (quoting *Fed. Power Comm'n v. Texaco Inc*., 417 U.S. 380, 397 (1974)), and because there have been "several significant legal developments since the BIA issued its decision" in 2019, *Pannu*, 639 F.3d at 1226, remand is appropriate to allow the BIA to consider the impact of subsequent case law in the first instance. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002) ("a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands," so that "the agency can bring its expertise to bear upon the matter"); *see also Kalilu v. Mukasey*, 548 F.3d 1215, 1217 (9th Cir. 2008) (remanding so the BIA can consider in the first instance the impact of subsequently issued BIA standards).

We next address the government's contention that remand here is a useless formality, because the BIA does not have jurisdiction to consider Suate-Orellana's motion to reopen in light of 8 U.S.C. § 1231(a)(5). That provision bars "reopen[ing] or review[]" of an order of removal which is reinstated under that provision, such as Suate-Orellana's.[5]

---

[5] The government acknowledges that § 1231(a)(5) "does not affect this Court's jurisdiction to review the agency's denial of Petitioner's motion to reopen." *See*, *e.g.*, *Cuenca v. Barr*, 956 F.3d 1079, 1084 (9th Cir. 2020) (finding jurisdiction to review the agency's denial under § 1231(a)(5) of a motion to reopen where the removal order was reinstated).

We hold that § 1231(a)(5) is non-jurisdictional, and that the BIA therefore may—as it did here—exercise jurisdiction over an appeal concerning a motion to reopen a reinstated removal order.

In *Santos-Zacaria*, the Supreme Court reaffirmed that a rule is jurisdictional only if Congress "clearly [so] states," 598 U.S. at 416 (quoting *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022)), or "unmistakably . . . so instruct[s]," *id*. at 417.

*Santos-Zacaria* dealt only with the jurisdiction of *courts* in analyzing 8 U.S.C. § 1252(d)(1)'s exhaustion requirement, but the classification of a rule as non-jurisdictional also implicates the agency's authority. *See Umana-Escobar*, 69 F.4th at 550 (recognizing that immigration court rules may "sound[] exclusively in jurisdiction" or implicate only "claim-processing").

Section 1231(a)(5) provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Like § 1252(d)(1), § 1231(a)(5) omits any statement that "no court shall have jurisdiction," *Santos-Zacaria*, 598 U.S.

at 418–19; indeed, there is no mention of jurisdiction at all.**[6]** The absence of any reference to jurisdiction is in sharp contrast to the "unambiguous jurisdictional terms" contained in other provisions of the INA. *Id*. at 419 (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012)).

The government argues that § 1231(a)(5) speaks in jurisdictional terms because it uses the word "review." But *Santos-Zacaria* rejected the argument that the word "review," standing alone, is unambiguously jurisdictional. *Id*. at 419. Although the exhaustion requirement in § 1252(d)(1) used the term "review," the Supreme Court explained that the word "review . . . does not necessarily refer to the court's *jurisdiction*." *Id*. at 420. *Santos-Zacaria* further reasoned that the fact that "[§]1252(d)(1) is not even focused solely on the court" reinforces the conclusion that it is not using the term "review" in a jurisdictional manner. *Id*. Similarly here, § 1231(a)(5) is not solely (or at all) focused on the courts or the BIA: it expressly addresses only "the alien" and "the Attorney General," referring to the entity or individual responsible for reinstating removal orders, DHS. *See* 8 C.F.R. § 241.8(a) (DHS regulation providing that "immigration officer[s]" issue reinstatement orders); *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 491 (9th Cir. 2007) (en banc) (explaining that reinstatement is a "ministerial enforcement action" that does not require a hearing in immigration court).**[7]** Under *Santos-Zacaria*,

---

[6] The statutory provision codifying motions to reopen, 8 U.S.C. § 1229a(c)(7), is likewise devoid of jurisdictional language.

[7] Under the Homeland Security Act of 2002, the immigration enforcement functions formerly carried out by the Attorney General are now vested in the Secretary of Homeland Security. *See* 6 U.S.C. § 251.

because § 1231(a)(5) does not "unmistakably" speak in jurisdictional terms, it is a non-jurisdictional rule.

The government relies on prior Ninth Circuit case law holding that § 1231(a)(5) "institut[es] a permanent jurisdictional bar" to reopening by the BIA and IJ. *Cuenca*, 956 F.3d at 1084; *see also Gutierrez-Zavala v. Garland*, 32 F.4th 806, 809–10 (9th Cir. 2022) (relying on *Cuenca* to hold that under § 1231(a)(5) the BIA lacked jurisdiction over a motion to reopen a reinstated removal order); *Bravo-Bravo*, 54 F.4th at 640–41 (same). These cases pre-dated *Santos-Zacaria*, however, and did not apply the analysis it requires—that a rule is not jurisdictional *unless* it "unmistakably . . . instruct[s]" that it is so. *Santos-Zacaria*, 598 U.S. at 417. Neither *Cuenca* nor its progeny pointed to any particular words in § 1231(a)(5) that would indicate that its proscription is *jurisdictional*, as opposed to non-jurisdictional, in nature. *See Cuenca*, 956 F.3d at 1084; *see also Gutierrez-Zavala*, 32 F.4th at 809–10; *Bravo-Bravo*, 54 F.4th at 640–41.

In sum, § 1231(a)(5) is not jurisdictional under the required analysis. The earlier cases holding otherwise are "clearly irreconcilable" with the Supreme Court's holding in *Santos-Zacaria* and thus are no longer controlling. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a panel of the Ninth Circuit may overrule precedent where "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable"); *see also Alonso-Juarez v. Garland*, 80 F.4th 1039, 1047 (9th Cir. 2023) (abrogating prior Ninth Circuit precedent in holding that 8 U.S.C. § 1252(b)(1) is not jurisdictional under the analysis required by *Santos-Zacaria*).

The government did not raise § 1231(a)(5) until we ordered supplemental briefing on the issue.  The issue therefore has been forfeited.**[8]**  *See Santos-Zacaria*, 598 U.S. at 423.  As a result, remand would not be "idle and useless." *Gutierrez-Zavala*, 32 F.4th at 811 (quoting *Singh v. Barr*, 935 F.3d 822, 827 (9th Cir. 2019)).  We therefore remand the case to the BIA to reconsider the merits of Suate-Orellana's claim that her NTA was statutorily deficient in light of *Niz-Chavez*, 593 U.S. at 171–72, *Bastide-Hernandez*, 39 F.4th at 1193 n.9, and *Matter of Fernandes*, 28 I. & N. Dec. at 616.

**PETITION GRANTED AND REMANDED.**

---

[8] In light of this conclusion, we need not consider Suate-Orellana's separate argument that § 1231(a)(5) does not apply to motions to reconsider, as opposed to motions to reopen.